IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FABICK, INC.,

                              Plaintiff,                  OPINION AND ORDER

v.

                                                          16-cv-172-wmc

FABCO EQUIPMENT, INC., and
JFTCO, INC.,

                              Defendants.

In this case, plaintiff Fabick, Inc., asserts a claim of trademark infringement and other related claims against defendants FABCO Equipment, Inc., and JFTCO, Inc. Before the court is a motion to dismiss plaintiff's claim against defendant JFTCO for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), on the basis that the allegations fail to meet the requirements of Rules 8 and 12(b)(6). (Dkt. #42.) For the reasons that follow, the court will grant that motion. Also before the court is plaintiff's more recently-filed motion for leave to amend its complaint to add a claim of civil conspiracy against defendants. Finding plaintiff unduly delayed in moving to amend its complaint, the court will deny that motion.

ALLEGATIONS OF FACT[1]

**A. Background**

The Fabick family has been involved in the business of selling construction and agricultural equipment since 1917. In 1982, Joseph Fabick, Sr., acquired two pre-existing

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

Caterpillar ("CAT") dealerships serving Wisconsin and the Upper Peninsula of Michigan. Those dealerships were ultimately merged to become defendant FABCO Equipment, Inc. FABCO is in the business of selling and renting equipment and technology used in the construction, agriculture and related industries. Defendant JFTCO acquired certain assets of FABCO on or about July 1, 2015.

Plaintiff Fabick, Inc., was originally created in December 1993 as a complementary business to FABCO. Fabick is in the business of spray-on bedliners, sealants and coatings.

**B. Fabick's Trademark, Service Mark and Domain Name**

At its founding, FABCO owned 100% of Fabick's stock and shared its customer lists, marketing personnel and product services representatives to build Fabick's business. On March 25, 1994, Fabick filed a trademark application for the mark "FABICK," and on April 11, 1994, Fabick filed a service mark application for the mark "FABICK." The USPTO granted the service mark on August 22, 1995, and the trademark on January 14, 1997.

On December 4, 1995, Fabick also registered the domain name "www.fabick.com." Shortly after that registration, John Fabick Tractor Company, a CAT dealer operating in Missouri and parts of Illinois, and an affiliate of defendant JFTCO, also sought to register the domain name "www.fabick.com." Upon learning that the name was already registered to Fabick, John Fabick Tractor Company approached defendant FABCO as the then controlling owner of plaintiff Fabick to procure Fabick's domain name registration, but FABCO refused.

On December 31, 1997, FABCO and Joseph Fabick, Sr., sold 100% of the stock in Fabick to Jay Fabick (Joseph Fabick's son).

**C. Registration of Competing Domain Names**

In July 2015, FABCO rebranded its name to "FABICK CAT." A web search for FABICK CAT reveals a domain name for "fabickcat.com." Plaintiff Fabick's domain name remains "fabick.com." JFTCO, or one of its affiliates, have also registered the following domain names: www.fabickcat.com, registered on February 17, 2004; www.fabicktrucks.com, registered on February 19, 2013; and www.fabickusedequipment.com, registered on May 31, 2013. Plaintiff further alleges that in July of 2015, "the websites associated with these domain names were updated to expand the locations from Missouri and parts of Illinois to also include locations in Wisconsin and the U.P." (Am. Compl. (dkt. #32) ¶ 46.)

Material to ACPA claim, plaintiff alleges that

- The domain name "fabickcat.com" was adopted long after the FABICK marks were registered and became distinctive.

- The domain names are confusingly similar.

- JFTCO has a short history of providing goods and services under the "FABICK CAT" brand name, and only entered the Wisconsin market in or around July 2015.

- "JFTCO has acted in bad faith with the intent to profit from the good will of Fabick's domain name and registered Marks. In so doing, JFTCO has confused actual and possible customers as to the source of goods and services, and otherwise usurping the good will of Fabick's domain name and registered Marks."

(Am. Compl. (dkt. #32) ¶ 69.)

OPINION

I. Motion to Dismiss

    A. Standard of Review for APCA Claim

Federal Rules of Civil Procedure 8 requires that the plaintiff make a "short a plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In effect, this means that the complaint must: (1) indicate "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; and (2) "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. When evaluating the sufficiency of the complaint, the court construes the allegations in the light most favorable to the non-moving party, accepting well-pled facts as true, and drawing all inferences in that party's favor. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d. 939, 946 (7th Cir. 2013).

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. See Fed. R. Civ. P. 12(b)(6). Dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations. *Twombly*, 550 U.S. at 563; *Iqbal*, 556 U.S. at 662. As this court has previously emphasized, the motion to dismiss phase of the proceedings "is not an opportunity for the court to find facts or weigh evidence." *My Health, Inc. v. Gen. Elec. Co.*, No. 15-CV-80-JDP, 2015 WL 9474293, at *2 (W.D. Wis. Dec. 28, 2015).

4

To state a claim under the ACPA against defendant JFTCO, plaintiff must allege that: "(1) [the mark] is a distinctive or famous mark entitled to protection; (2) defendants' domain names are "identical or confusingly similar to" plaintiff's mark; and (3) defendants registered the domain names with the bad faith intent to profit from them." *Land's End v. Remy*, 447 F. Supp. 2d 941, 947 (W.D. Wis. 2006) (citing 15 U.S.C. § 1125(d)(1)(A)). Here, JFTCO contends that plaintiff has failed to allege adequately the third of these elements. As described in defendant's opening brief, this element "cannot be equated with 'bad faith' in other contexts (such as trademark infringement)." *Flat Rate Movers Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 382 (S.D.N.Y. 2015) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 n.13 (2d Cir. 2000)). Instead, it requires a showing that "the defendant's use of the domain name is an attempt to profit specifically from 'squatting' on the domain name with bad faith, rather than simply . . . another aspect of the alleged trademark infringement." *Id.* (internal citation and quotation marks omitted).

The ACPA itself provides guidance on how to assess this element, setting forth factors "a court may consider" that indicates the absence of bad faith (the first four below) or the existence of bad faith (the remaining five):

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

### B. Application of Standard

Defendant JFTCO contends that the four factors indicating an absence of bad faith all weigh in defendant's favor and that plaintiff has failed to allege facts showing

bad faith under the other factors. (Def.'s Opening Br. (dkt. #43) 5-6.) In opposition to defendant's motion, plaintiff challenges defendant's reference to the factors, implicitly arguing that such an approach requires a review of the merits. The court disagrees. Considering plaintiff's allegations in light of the statutory factors for alleging bad faith under the ACPA is not inherently suspect. The factors described above inform that element of the ACPA claim. The court is not requiring any proof of that element at the pleading stage, but simply is considering what minimal allegations are necessary to sustain that element in the face of a motion to dismiss. *See In re Bill of Lading & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) ("Determining whether a complaint states a plausible claim for relief is a very context-specific task. Thus, the district court was required to analyze the facts plead in the amended complaints and all documents attached thereto with reference to the elements of a cause of action for contributory infringement to determine whether R+L's claims of contributory infringement were in fact plausible." (internal citation and quotation marks omitted)). For the purpose of deciding defendant's motion, therefore, the court solely considers whether plaintiff has *alleged* sufficient facts to support a finding of bad faith intent to profit.

In opposition to defendant's motion, plaintiff identifies only the following allegations:

- "JFTCO's affiliate unsuccessfully attempted to procure the www.fabick.com domain name and then went on to register confusingly similar marks anyway, including domain names that solely use the mark 'FABICK' instead of 'FABICK CAT.'"

- "JFTCO expanded its use of the 'fabick' domain names to include soliciting customers in Wisconsin and the U.P."

(Pl.'s Opp'n (dkt. #46) 4.) From this alone, plaintiff argues that bad faith can reasonably be inferred under the ACPA, just as it was by the Fourth Circuit Court of Appeals in *Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002). In *Harrods*, the district court found that there was sufficient evidence with respect to fifty-four of the domain names to support a finding of bad faith intent to profit. Plaintiff points to a particular statement in the Fourth Circuit's affirmance that "if a concurrent user registers a domain name with the intent of expanding its use of the shared mark beyond its geographically restricted area, then the domain name is registered in bad faith as outlined in the ACPA." *Id.* at 234.

In its reply, defendant distinguishes *Harrods* on several credible bases. Most persuasive, plaintiff's allegations here do not support a reasonable inference that the domain name was registered with the intent to expand its use into Wisconsin and the U.P. for two core reasons. *First*, the www.fabickcat.com domain was registered more than ten years before JFTCO's use of the Fabick tradename in Wisconsin or the U.P., and therefore any inference that it was registered with the intent of expanding its business into these new territories is not reasonable. *Second*, and more critically, plaintiff and defendants are not competitors (unlike the parties in *Harrods*), and therefore any intent to expand use of the shared mark into Wisconsin or the U.P. does not give rise to a reasonable inference that defendants intend to profit *off of the domain name* in bad faith. *See Harrods*, 302 F.3d at 239 (the ACPA is not intended to reach legitimate concurrent users, like Delta Airlines and Delta Faucets); *cf. Flentye v. Kathrein*, 485 F. Supp. 2d 903,

915 (N.D. Ill. 2007) (finding allegations sufficient where defendant was direct competitor).

Therefore, construing the facts in the light most favorable to plaintiff, accepting all well-pled facts as true and drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has failed to allege bad faith intent to profit, a required element of its APCA claim. *See Fennick v. Sams*, No. 2:11-CV-01107, 2012 WL 27336, at *4 (S.D. Ohio Jan. 5, 2012), *report and recommendation adopted*, No. 2:11-CV-01107, 2012 WL 628503 (S.D. Ohio Feb. 27, 2012) (dismissing APCA claim where defendant failed to plead sufficient facts to support an inference of bad faith, and specifically noting that defendant's use of the domain name appears to be "in connection with a legitimate business for purposes of selling services."); *Nau Holdings, LLC v. Dlorah, Inc.*, No. CIVA08CV02743CMABNB, 2010 WL 447393, at *6 (D. Colo. Feb. 3, 2010) (reviewing § 1125(d)(1)(B) factors and dismissing the claim on the pleadings).

**II. Motion for Leave to Amend Complaint**

Also before the court is plaintiff's motion to amend its complaint to add a claim of civil conspiracy against both defendants. Materially, plaintiff alleges that "[o]ne or more of the Defendants conspired together, and with John Fabick Tractor Company, to commit the wrongful acts set forth in this Second Amended Complaint, including, but not limited to, the development of the 'FABICK' brand, and the plan to use and market the brand in infringement of Fabick's registered Marks and common law trademark

9

rights, and the actual use of the brand in commerce." (Pl.'s Proposed 2d Am. Compl. (dkt. #58-1) ¶ 129.)[2]

Typically, leave to amend should be "freely" given. Fed. R. Civ. P. 15(a)(2). Notwithstanding this "liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (internal quotation omitted).

Under Wisconsin law, "[a] civil conspiracy is 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.'" *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 701 N.W.2d 523 (quoting *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977)). "To state a cause of action for civil conspiracy, the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Onderdonk*, 79 Wis. 2d at 246, 255 N.W.2d at 510.

Under Wisconsin law, a claim for civil conspiracy also requires an underlying tort to be actionable. *Segall v. Hurwitz*, 114 Wis. 2d 471, 482, 339 N.W.2d 333, 339 (Ct. App. 1983) ("It is the tort, and each tort, not the conspiracy, that is actionable."); *see also*

---

[2] Plaintiff also alleges a claim based on the underlying ACPA count, but in light of the court's dismissal of that claim, the court need not consider this specific allegation.

*Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 924 (W.D. Wis. 2007) (examining Wisconsin law and noting "a civil conspiracy requires an underlying tort").

As plaintiff acknowledges in its reply brief, this proposed claim is "more of a theory of relief than an entirely new cause of action." (Pl.'s Reply (dkt. #78) 7.) In light of the fact that plaintiff asserts trademark infringement claims against *both* defendants -- unlike the ACPA claim which was solely asserted against defendant JFTCO -- it is not at all clear what plaintiff achieves by its proposed amendment. Regardless of whether leave is granted, plaintiff may pursue its theory that the infringement was planned as part of the July 2015 purchase of FABCO's assets, including its intellectual property, by JFTCO. While one could argue that the limited impact of this proposed new claim undercuts a finding that defendants would be prejudiced by its addition, a conspiracy claim would further complicate what should be a straightforward question of trademark infringement as to each of the defendants.

The court however need not wade into whether the amendment would be futile or whether defendants would be prejudiced by the amendment because plaintiff unduly delayed seeking leave to add a new claim. Plaintiff's brief in support of its motion is a prime example of a party burying the lead in hopes of obfuscating the timing problem underlying its motion. Plaintiff harps on defendants' alleged failure to produce the entire Asset Purchase Agreement, but as is clear from defendants' opposition brief and supporting materials, plaintiff received discovery central to its new allegations relating to the transition of the FABICK CAT name beginning in early December 2016 and received an unredacted copy of the APA -- including the schedule related to trademarks and other

intellectual property -- on December 9, 2016. Despite this, plaintiff did not seek leave to add this claim until April 2017. In light of the procedural posture of this case, with dispositive motions due June 9, 2017, the court will deny plaintiff's leave to amend, although it notes that nothing about this decision limits plaintiff's ability to rely on the allegations in its proposed second amended complaint to prove its trademark infringement claims.

ORDER

IT IS ORDERED that:

1) Defendant JFTCO, Inc.'s motion to dismiss plaintiff's ACPA count (dkt. #42) is GRANTED.

2) Plaintiff Fabick, Inc.'s motion to amend the pleadings (dkt. #58) is DENIED.

3) Plaintiff is directed to file an second amended complaint consistent with this court's order by June 14, 2017. Defendants' answers are due by June 28, 2017.

Entered this 7th day of May, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge