IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FABICK, INC.,

                        Plaintiff,

     v.

FABCO EQUIPMENT, INC. and
JFTCO, INC.,

                    Defendants.

OPINION AND ORDER

16-cv-172-wmc

This case is set for a jury trial commencing, December 11, 2017, to resolve plaintiff Fabick, Inc.'s remaining claims of trademark infringement against defendants FABCO Equipment, Inc., and JFTCO, Inc. In advance of the final pretrial conference scheduled for December 6, the court issues the following opinion and order on the parties' respective motions in limine. As described below, the parties rehash a number of arguments presented and considered at summary judgment, some of which were raised expressly to avoid waiver. Nonetheless, the court will address each motion in turn.

## OPINION

## I. Plaintiff's Motions in Limine (dkt. #245)

### A. MIL No. 1: Exclude Testimony of Dr. Neeraj Arora

Plaintiff's first motion seeks to exclude defendants' expert Dr. Neeraj Arora's testimony from trial. The standard for reviewing this challenge is a familiar one, principally governed by Federal Rule of Evidence 702, as elucidated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In applying Rule 702, a district court is to function as a "gatekeeper," determining whether a party's proffered expert testimony is relevant and reliable. *Daubert*, 509 U.S. at 589; *see also United States v. Johnsted*, 30 F. Supp. 3d 814, 816 (W.D. Wis. 2013) (expert testimony must be "not only relevant, but reliable"). Although "liberally admissible under the Federal Rules of Evidence," *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008), expert testimony must, therefore, satisfy the following three-part test:

(1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702;

(2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, Daubert, 509 U.S. at 592-93; and

(3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Still, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Plaintiff offers two core, related challenges to Arora's proposed testimony: (1) the testimony is not helpful to the jury because it is on a subject "entirely within the comprehension and common understanding" of the jury; and (2) the testimony "lacks any sort of repeatable, reliable methodology or technique," but instead is "based exclusively on unsupported speculation and subjective belief." (Pl.'s Mot. (dkt. #246) 1.)

In his report, Arora describes his qualifications and the information he received from the parties and considered in forming his opinions, provides an overview of his understanding of the law governing plaintiff's claims, and then proceeds to analyze the seven factors relevant to the likelihood of confusion element of plaintiff's trademark infringement claims. (Arora's Rept. (dkt. #141).) As an expert witness, Arora will be offering *no* testimony about *his* understanding of the law, "overview" or otherwise. The court will address the law, as well as Arora's qualifications in a short narrative before he testifies, and his descriptions of the information he reviewed will be equally brief.

Contrary to plaintiff's conclusory statement that Arora's opinions are solely based on his subjective, personal opinion about these seven factors, however, the bulk of his analysis under each factor draws on his expertise, including marketing and related literature and studies. In reviewing Arora's report, the court finds the following opinions helpful to the jury and sufficiently supported by Arora's marketing expertise and analysis: the salient parts of the parties' respective marks and, in particular, the relevance of the CAT portion of defendants' mark in arriving at this determination (*id.* at ¶ 21); the parties' respective methods and channels of advertising (*id.* at ¶ 31); the degree of care exercise by consumers (*id.* at ¶¶ 35-40); and the respective strength of the marks (*id.* at ¶¶ 43-47). (*See generally*

Defs.' Opp'n (dkt. #275) 3 n.1 (citing cases admitting and relying on expert testimony covering similar topics).) With respect to each of these specific opinions, Arora's analysis is distinguishable from the so-called expert opinions in the cases cited by plaintiff, which struck testimony that was not based on specialized knowledge. (*Id.* at 6-8 (distinguishing cases cited by plaintiff).)

However, the court agrees with plaintiff that other of Arora's opinions fall short of the threshold established by Rule 702 and *Daubert*, including: (1) Arora's assessment of the similarity of products (Arora's Rept. (dkt. #141) ¶¶ 25-27), (2) his characterizations of plaintiff's evidence of actual confusion (*id.* at ¶¶ 51-53), and (3) his conclusion that there was no evidence of an intent of defendant to palm off their products as plaintiff's (*id.* at ¶ 54.) None of these opinions appear to touch on his expertise or otherwise assist the jury in making this determination, especially purporting to opine on an element of intent normally left to the jury. Equally, defendants fail to develop a specific response to each of these opinions, particularly as to the supposed expertise Arora is able to supply a lay juror in making these judgments. Accordingly, the court will exclude him from offering those opinions, unless defendants can explain at the final pretrial conference how the identified portions of Arora's report draw from his specialized knowledge, and, therefore, would assist the court.

Plaintiff also challenges Arora's opinions as lacking any reliable methodology, at least without a consumer survey to support them. As defendants point out, however, Arora *does* explain credibly (if not compellingly) in his report why certain established options for testing the likelihood of confusion do not fit the particular circumstances of this case.

4

(Arora Rept. (dkt. #141) ¶¶ 48-49.)  Plaintiff is free to question Arora about his failure to conduct any field studies -- although if plaintiff initiates that line of questioning, it will have opened the door as to the reasons for Arora's opinion that survey options do not fit the facts of this case.  Accordingly, plaintiff's motion to exclude Arora's testimony is GRANTED IN PART AND DENIED IN PART.  Arora may testify with regard to his opinion as to each of the factors approved above but will be precluded from testifying as to those elements not touching on his specialized knowledge, which, in turn, means that he cannot testify as to the ultimate likelihood of confusion question.

### B.  MIL No. 2: Exclude Testimony of Jeffrey Cordray

Plaintiff also seeks to exclude certain testimony of defendants' damages expert, Jeffrey Cordray.  Cordray's opinion was offered in rebuttal to plaintiff's damages expert, Richard Bero.  Plaintiff represents that Bero's opinions "related solely to Defendants' sales data as relevant for proof of Defendants' profits damages."  (Pl.'s Br. (dkt. #246) 12.) Plaintiff argues that Cordray's opinion extends beyond any rebuttal to a damages theory based on defendants' profits to opinions concerning plaintiff's sales.  Regardless, as plaintiff points out in its motion, to the extent the court strikes a damages theory based on defendants' profits, then Bero's opinions are not relevant, as are Cordray's.  The court agrees for the reasons explained below in its ruling on defendants' motion in limine no. 2. Because the court *will* exclude any damages theory based on *defendants'* profits, Bero's testimony will be excluded.  Accordingly, there will be nothing for Cordray to rebut and plaintiff's MIL No. 2 is DENIED as moot.

### C. MIL No. 3: Bar Prior Use Affirmative Defense

In this motion in limine, plaintiff seeks an order barring defendants from asserting an affirmative defense based on the John Fabick Tractor Company's prior use of the Fabick mark. While plaintiff acknowledges that the court rejected this argument at summary judgment, and specifically rejected plaintiff's reliance on an opinion by the Trademark Trial and Appeal Board, *Noble House Home Furnishings, LLC*, 2016 WL 3357265, 118 U.S.P.Q.2d 1413 (T.T.A.B. Apr. 4, 2016), plaintiff seeks review "from an evidentiary perspective in order to preserve Fabick's objection for the record and ensure that there is no waiver." (Pl.'s Br. (dkt. #246) 12.)

In addition to repeating its arguments based on *Noble House*, plaintiff attached another opinion of TTAB, *Moreno v. Pro Boxing Supplies, Inc.*, Opp. Nos. 91214580, 91214877, Cancellation No. 92058878 (T.T.A.B. Sept. 8, 2017).[1] This case is similarly unhelpful since TTAB's discussion solely concerned whether a licensee could rely on the prior use of a licensor. *Id., slip op.* at p.16-18. In asserting a prior use defense, however, defendants do not rely on a licensing relationship. Instead, as explained at summary judgment, reliance on the John Fabick Tractor Company's superior rights will turn on "whether the John Fabick Tractor Company and JFTCO specifically, or its subsidiaries more broadly, 'were operated in such a[] way that they appeared to the consuming public as one entity.'" (11/8/17 Op. & Order (dkt. #221) 29-30 (quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997).) Since plaintiff offers no basis to revisit this view, this motion is DENIED.

---

[1] *Moreno* is not readily available and appears not to have been published, but is part of dkt. #261.

**D. MIL No. 4: Bar Unclean Hands and Fraud in the Procurement Defenses**

In this motion, plaintiff again travels ground already explored in the summary judgment briefing, apparently to address the "evidentiary bases" for these defenses, as well as preserve any challenges for appeal. In doing so, plaintiff argues that neither Fabick's initial registration of the trademarks, including Jay Fabick's declaration, nor the later transfer of the marks to J.G. Fabick, L.L.C., are sufficiently related to defendants' infringement to support a finding of unclean hands. *First*, with respect to the declaration, plaintiff contends that defendants' evidence demonstrates no more than that Jay Fabick knew of and did not believe that the "existence of John Fabick Tractor Company" constitutes a use of the mark plaintiff sought to register. As the court also explained at summary judgment, however, this argument rests on the false premise that defendants' unclean hands and fraudulent procurement defenses depend solely on the existence of the John Fabick Tractor Company, rather than on the use of the FABICK mark itself by that company. (11/8/17 Op. & Order (dkt. #221) 31 (describing defendants' focus on use of "Fabick" rather than "John Fabick Tractor Company" mark); *id.* at 52-53 (describing defendants' evidence that Jay knew of the use of the "Fabick" mark by the John Fabick Tractor Company).)[2]

*Second*, with respect to the transfer of the trademarks to the shell LLC, plaintiff argues persuasively that this action is too attenuated to form the basis for a finding of

---

[2] Plaintiff also complains of prejudice, asking that the court take up both defenses, but as explained on summary judgment, while the unclean hands defense is one for the court (11/8/17 Op. & Order (dkt. #221) 55), the defense of fraud in the procurement is for the jury to decide. *See* Seventh Cir. Pattern Civ. Jury Instructions § 13.5.8 (2008 rev.).

unclean hands with respect to its acquisition of the mark. As the court indicated in its summary judgment opinion, the court is sympathetic to this argument, and will hear argument at the final pretrial conference. (11/8/17 Op. & Order (dkt. #221) 56.)

Accordingly, the court will DENY the motion with respect to the defenses premised on Jay's declaration to the USPTO. Since the evidence of the transfer of the trademarks to J.G. Fabick, L.L.C. will be presented to the jury as part of defendants' abandonment defense, the court will RESERVE on its relevance to the unclean hands defense pending oral argument to the court once the jury is deliberating on liability.[3]

### E. MIL No. 5: Bar Abandonment Defense

Plaintiff further seeks to exclude defendants' abandonment defense under 15 U.S.C. § 1127, whether based on a finding that: (1) the J.G. Fabick, L.L.C., and Fabick, Inc., are "related companies" as defined under 15 U.S.C. § 1127 (and, therefore, Fabick, Inc.'s use of the mark should inure to the benefit of J.G. Fabick, L.L.C.); *or* (2) there was an implied license between the companies.

In response, defendants argue that this is an untimely motion for summary judgment, and the court should deny it on that basis alone. Certainly, this motion would have been more easily and efficiently addressed at summary judgment, but no party is obligated to bring every potentially meritorious claim or defense at summary judgment. Moreover, the court will not ask the jury to decide a case on a claim or defense that has no

---

[3] The court, however, will discuss with the parties at the final pretrial conference whether some of this evidence would apply only to the unclean hands defense and how to allow for its admission outside of the presence of the jury.

merit. Still, as defendants detail in their opposition, factual disputes here would preclude an adjudication as a matter of law in any event. Indeed, the record at summary judgment was undeveloped as to J.G. Fabick, L.L.C.'s function and relationship to Fabick, Inc., leaving open factual questions, among others, as to: (1) whether an implied license existed between J.G. Fabick, L.L.C., and Fabick, Inc., and (2) whether the two entities are "related companies," as that term is defined under § 1127. As such, the court will DENY this motion, but will take up with the parties at the final pretrial conference the nature of plaintiff's rebuttal to this defense.

### F. MIL No. 6: Exclude Evidence Regarding Third-Party Use of FABICK Mark

In this motion, plaintiff seeks to exclude "any evidence of third party use of the Marks for which [defendants] have no evidence of actual use in commerce by said third parties or the extent of such use." (Pl.'s Br. (dkt. #246) 24.) As defendants point out in their reply, this dispute may be mostly one of definition, since "use" in websites, for example, appears to constitute "use in commerce," without regard to whether the underlying businesses using the name were commercially successful. *See Eva's Bridal Ltd. v. Halanick Enters, Inc.*, 639 F.3d 788 (7th Cir. 2011) (discussing "use" of mark in context of naked licensing challenge); *see also* 15 U.S.C. § 1127 (defining "use in commerce"). Therefore, while the *planned* use of the name for a third-party business that *never* launched would *not* be material to the jury's determination of likelihood of confusion (or of a naked licensing or failure to control the marks adequately) theory, evidence defendants seek to admit may meet the use in commerce requirement. As such, this motion is DENIED

without prejudice to plaintiff objecting to particular testimony or evidence about the use of the Fabick name by third parties that is not material to the jury's determination of the strength of the mark (or naked licensing / failure to control) defense.

### G. MIL No. 7: Preclude Questioning of Jay Fabick Regarding Marijuana Possession in High School

In its final motion, plaintiff seeks an order excluding any questioning of Jay Fabick about marijuana possession during high school. Specifically, plaintiff contends that such evidence is not relevant, constitutes inadmissible character evidence under Federal Rule of Evidence 404(b)(1), and is improper impeachment evidence under Rules 607 and 608. In response, defendants do not oppose this motion, agreeing that such personal information should not be raised at trial. As such, MIL No. 7 is GRANTED as unopposed.

## II. Defendants' Motions in Limine

### A. MIL No. 1: Preclude Evidence and Argument of Actual Damages (dkt. #228)

In its opinion and order on defendants' motion for summary judgment on a claim for monetary damages, the court concluded that "anything that was not timely disclosed under Rule 26(a)(1)(A)(iii) cannot be sought at trial, but it is difficult to discern what has been disclosed under that rule and will expect plaintiff to set forth precisely when and what it disclosed as to its damages claims at the final pretrial conference." (11/8/17 Op. & Order (dkt. #221) 62 n.30.) Defendants now seek an order excluding "all argument and testimony on any topic relating to Plaintiff's alleged harm to its goodwill, time spent dealing with alleged instances of actual confusion, remedial advertising damages or other

monetary relief" on the basis that plaintiff has failed to provide a computation of damages as required under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) or otherwise adequately respond to discovery requests.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires that a party must provide as part of his initial disclosures "a computation of each category of damages claimed by the disclosing party." "A Rule 26(a)(1)(A)(iii) statement is, by the express language of that Rule, an 'initial disclosure.'" *Mays v. Grand Daddy's, LLC*, No. 14-CV-461-SLC, 2015 WL 75067, at *4 (W.D. Wis. Jan. 6, 2015). Indeed, the Rule itself expressly contemplates supplementation. Fed. R. Civ. P. 26(e). Still, failure to disclose information required by Rule 26(a) means that "the party is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In response, plaintiff does not attempt to argue that its initial disclosure, dated November 30, 2016, was adequate, nor could it since the disclosure only lists categories of damages without any attempt at a "computation." (*See* Polaskowski Decl., Ex. P (dkt. #242-16) 12-13.) Moreover, plaintiff's supplemental, initial disclosures served September 8 and October 13, 2017, contain the same cursory list. (*Id.*, Exs. Q, R (dkt. ## 242-17, 242-18).) In response to an interrogatory specifically seeking information about plaintiff's damages theories, plaintiff purported to object on the basis that "it seeks information in advance of the deadlines assigned by in the Court's October 28, 2016 Preliminary Pretrial Conference Order," but promised to supplement "as responsive information is discovered

and/or becomes available." (Dettman Decl., Ex. E (dkt. #294-5) 19-20; *id.*, Ex. F (dkt. #294-6) 7.)

Nonetheless, in its opposition brief, plaintiff claims to have "timely disclosed to Defendants its basis for damages and the underlying documentation supporting the $740,000 in advertising expenditures" and asserts that Jay Fabick sat for a Rule 30(b)(6) deposition during which defendants had the chance to explore plaintiff's damages theories. (Pl.'s Resp. (dkt. #288) 2.) In support, plaintiff cites to three discovery responses and Jay's deposition. (*Id.* (citing Dettmann Decl., Exs. E, F, G and Jay Fabick's Oct. 10, 2017 Depo.).)

Exhibit E to Attorney Dettmann's declaration is plaintiff's second supplemental objections and answers to the first set of interrogatories and supplemental responses to requests to admit. (Dettmann Decl., Ex. E (dkt. #294-5).) The response is 23 pages, but plaintiff fails to direct the court to any particular answers or even section(s) of the document. Moreover, as described above, plaintiff actually objected and failed to provide any information in its initial response to Interrogatory 15 on some unknown date, which specifically seeks information about plaintiff's damages case.

Even plaintiff's supplemental answer, dated October 6, 2017, only provides the following information in pertinent part:

> Although difficult to quantify in numerical terms, Fabick states that it has been damaged and/or harmed as a result of FABCO's conduct as follows: The diminution in value of the FABICK Mark as associated with the business of Fabick, Inc., as a result of JFTCO's misappropriation of that MARK for itself and FABCO's aiding and abetting of that misappropriation; lost profits associated with any lost sales or other missed opportunities caused by customers and potential customers

> contacting JFTCO for Fabick products and not being
> redirected to Fabick, Inc.; loss of its goodwill and reputation as
> a result of customers, vendors and suppliers association Fabick,
> Inc., with JFTCO, Inc., and the loss of association of the
> FABICK Mark with Fabick's products and services; and the
> time and resources of Fabick's staff necessary to address the
> continuing confusion between Defendants and Fabick, Inc.

(Dettmann Decl., Ex. E (dkt. #294-5) 20.)  Plaintiff then goes on to describe a "loss of

revenue" since 2015, and specifically mentions the downturn in its epoxy business.  (*Id.*)

Plaintiff also references that it has "invested approximately $740,000 in actual, direct

advertising costs to develop and promote the Fabick name in association with Fabick's

good[s] and services, the value of which has been lost as a result of the Defendants'

infringing activities or contributions to the infringing activities." (*Id.* at 20-21.)

Plaintiff also cites its third supplemental interrogatory responses, attached as

Exhibit F to Dettmann's declaration.  (Dettmann Decl., Ex. F (dkt. #294-6).)  That

document is an undated, 8-page document without a signature page or any indication of

*when* it was served on defendants, and again plaintiff cites to the entire document without

any reference to a particular page.  Regardless, the same, supplemental answer to a damages

interrogatory is the same as that quoted above, now identified as Interrogatory No. 14.

(*Id.* at 7-8.)  To the extent plaintiff provided any subsequent supplemental answer, those

pages were not provided to the court.

Next, plaintiff cites to it objections and responses to defendants' fifth set of requests

for production, dated September 27, 2017, which plaintiff once again -- by now, tellingly

and unhelpfully -- cites to the entire document, without any reference to particular pages.

(Dettmann Decl., Ex. G (dkt. #294-7).)  In general, this fifth request for production sought

time records and/or timecards for various employees of plaintiff. Now less then 90 days to trial, plaintiff still objected to these records, stating that "it does not currently have Non-privileged documents responsive to th[ese] Request[s]." (*See, e.g.*, *id.* at 4.) Defendants also sought all business records concerning advertising, and in particular, records supporting plaintiff's statement that it spent $740,000 on advertising and marketing efforts since 1993. Plaintiff objected to this request as well, indicating that some documents are privileged, but nonetheless agreeing to produce non-duplicative, non-privileged documents responsive to the request. (*Id.* at 7.)

Finally, plaintiff cites to a bulk, 40-page excerpt from Jay Fabick's October 10, 2017, 30(b)(6) deposition, which in the court's cursory review touches on the various damages theories described in plaintiff's supplemental answer to Interrogatory No. 15. (Jay Fabick 30(b)(6) Depo. (dkt. #257) 120-160).) Ultimately, Jay Fabick's Rule 30(b)(6) deposition designation merely underscores the repeating, inadequate articulation of plaintiff's damages theory through its answer to defendants' interrogatories and purported production of damages-related discovery. Plaintiff argues, as it did in its supplemental answer to the damages interrogatory, that proof of damages in trademark cases -- in particular, an award based on damage to goodwill -- "is particularly flexible and not subject to stringent requirements of mathematical proof." (Pl.'s Resp. (dkt. #288) 2.) While true, and the court would instruct the jury accordingly, plaintiff must still demonstrate that it was injured by defendants' conduct and provide a non-speculative basis for an award of damages. Even if it could do the former, plaintiff never provided a factual basis for a jury to award $750,000 in loss of goodwill, whether by expert testimony or otherwise.

Accordingly, this motion is GRANTED, although plaintiff's counsel will be allowed one last opportunity to point out timely disclosed, *specific* evidence or qualified opinion that would support a monetary award for past damages at the final pretrial conference.

## B. MIL No. 2: Preclude Evidence and Argument of Damages Theory Based on Defendants' Profits or Plaintiff's Lost Sales and Exclude Testimony of Richard Bero (dkt. #229)

In this motion, defendants seek an order precluding plaintiff from seeking damages based on defendants' profits and excluding plaintiff's expert Richard Bero's testimony concerning defendants' sales. In its summary judgment opinion, the court previously concluded that plaintiff had failed to put forth any evidence or theory to support a damages claim based on defendant's profits. The court explained, "[w]hile plaintiff states in its opposition brief that a defendant's profits may be award (Pl.'s Opp'n (dkt. #147) 88), it failed to develop any theory as to why such an award would be appropriate here, much less evidence supporting its award." (11/8/17 Op. & Order (dkt. #221) 63.) The court also concluded the same with respect to any damages theory based on plaintiff's lost sales. (*Id.* at 62.)

In its response, plaintiff acknowledges those rulings, but contends that it opposes the motion to preserve its objections. (Pl.'s Opp'n (dkt. #288) 5.) Finding no reason to reconsider its summary judgment decision, this motion in limine is also GRANTED.

## C. MIL No. 3: Exclude Argument and Evidence of Damages Related to FABCO, Equipment, Inc. (dkt. #230)

In this related motion, defendants seek to exclude plaintiff's claim for damages arising out of defendant FABCO's alleged contributory infringement claim. Specifically,

defendant FABCO again argues that (1) the claim is premised on recovery of defendant's profits that has already been rejected by the court and (2) plaintiff failed to adequately disclose the basis for these as required under Rule 26(a)(1)(iii).

In response, plaintiff simply states that "Plaintiff's damages theory for JFTCO and FABCO is based precisely on the same evidence. FABCO is equally liable for JFTCO's direct infringement, and any harm caused to Plaintiff." (Pl.'s Opp'n (dkt. #288) 9.) Although plaintiff's claims for disgorgement of profits against FABCO, which financed obtaining the mark and was not a functioning entity at the time of infringement, are even more suspect than those against JFTCO, the court agrees with defendants that any claim to damages based on FABCO's profits is excluded for the reasons already described in the court's summary judgment opinion and ruling on defendants' motion in limine no. 1. Accordingly, this motion is also GRANTED.[4]

### D. MIL No. 4: Preclude Prior Use Arguments Rejected by the Court (dkt. #231)

With respect to their prior use defense, defendants also seek an order precluding plaintiff from arguing that: "(1) the use of a mark by a parent entity cannot inure to the benefit of a subsidiary and (2) JFTCO must prove that the current FABICK CAT mark is the legal equivalent of the prior use of the JOHN FABICK TRACTOR COMPANY mark." (Defs. Mot. (dkt. #231) 2.) Both arguments were raised and considered by the court at summary judgment. As to the first, the court agrees with defendants that plaintiff is

---

[4] Given FABCO's past role in obtaining the mark and dissolved status, the court does not understand the reason for plaintiff, much less defendants, wanting to include it at trial, and it will pursue that question further with the parties at the final pretrial conference.

precluded from arguing that the use of a mark by a parent company cannot inure to the benefit of a subsidiary. Instead, consistent with the court's prior opinion, the jury will be instructed that JFTCO may rely on the John Fabick Tractor Company's prior use if the John Fabick Tractor Company and JFTCO specifically, or its subsidiaries more broadly, "were operated in such a[] way that they appeared to the consuming public as one entity." (11/8/17 Op. & Order (dkt. #221) 29-30 (quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)).)

As for defendants' second argument, the relief being requested is substantially less clear. To the extent defendants seek an order clarifying that the prior comparison is between the FABICK CAT mark currently used by JFTCO and the John Fabick Tractor Company's prior use of the FABICK mark (as opposed to the full JOHN FABICK TRACTOR COMPANY mark), the court agrees and will so instruct the jury, as well as preclude plaintiff from arguing otherwise. Indeed, as the court explained in its summary judgment opinion, the jury will be asked to consider as part of defendants' prior use affirmative defense, whether the consuming public would view the prior use by defendant John Fabick Tractor Company of the FABICK mark, if any, as the same as the current use of JTFCO's FABICK CAT mark. (*Id.* at 31 (citing *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 910 (2015)).) In its response, plaintiff acknowledges the court's prior ruling and purports to oppose the motion to preserve its argument only. As such, defendants' motion is GRANTED to the extent it is consistent with the court's summary judgment opinion and jury instruction plan.

**E. MIL No. 5: Preclude Hearsay Evidence of Actual Confusion (dkt. #232)**

In its opinion and order on summary judgment, the court also considered plaintiff's evidence of actual confusion -- namely, plaintiff's employees' log, of sorts, of mistaken calls, visits and mail -- on the basis that the evidence fell within an exception to hearsay under Federal Rule of Evidence 803(3). (11/8/17 Op. & Order (dkt. #221) 47.) In this motion in limine, defendants argue that the ruling was in error and ask the court to reconsider it, citing cases where courts excluded this evidence, including the Seventh Circuit decision in *Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327 (7th Cir. 1993).

The cases cited by defendants, however, are either distinguishable from plaintiff's evidence because it was offered to prove an existing mental state or represents the minority view, which this court does not embrace, particularly because of the Seventh Circuit's *Smith* decision. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23.15 (contrasting the "minority" view, barring employee testimony that there was confusion as hearsay, in contrast with the "majority" view, admitting this testimony; specifically citing *Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996), as illustrative of minority view).

In *Smith,* the Seventh Circuit affirmed a district court's finding of no evidence of actual confusion, and more specifically, disregarding an employee's testimony that "at an Air Force trade show, '*a gentleman* came in the booth and picked up my sample and *said something like,* have you been over to Ameron's booth, you're not making that pipe [for them] are you? It looks just like a Smith product.'" *Id.* at 1330-31 (emphasis in original). Even so, the Seventh Circuit expressly considered whether this testimony fell within the

803(3) exception for existing mental condition, only concluding that it did not because: (1) "the identity of the declarant was unknown" and (2) the witness paraphrased the declarant's alleged statement in vague terms. *Id.* at 1331 n.2; *see also Ponemman v. Nike, Inc.*, 161 F.3d 619, 630 (N.D. Ill. 2016) (excluding tweets because plaintiff admitted that "these statements were not indicative of actual confusion," among other reasons); *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 520 (N.D. Ill. 2011) (excluding accounts of confusion by "unknown" and "unidentified" consumers as hearsay, and for other independent reasons). *Patterson v. World Wresting Entm't, Inc.*, No. 03-C-0374, 2006 WL 273527, at *22 (E.D. Wis. Jan. 31, 2006) (excluding witness's "report of what the unidentified person told him" as inadmissible hearsay evidence).

In contrast, the Fabick employees' declarations dealing with alleged consumer confusion are much more detailed, identifying the declarant *and* providing the actual exchange between the witness and third-party declarant. As a general proposition, therefore, the court finds this testimony falls within the 803(3) exception, consistent with its summary judgment opinion. Of course, defendants remain free to challenge specific evidence of actual confusion where the caller or visitor is not adequately identified, or what was said is not sufficiently precise.

Accordingly, defendants' MIL No. 5 is DENIED, without prejudice to defendants objecting to specific testimony. Furthermore, the court will take up defendants' request to impose restrictions on how this evidence may be used at the final pretrial conference.

### F. MIL No. 6: Preclude Plaintiff's Evidence Relating to Likelihood of Confusion that Predates the Alleged Infringement (dkt. #233)

In this motion, defendants seek to exclude plaintiff's evidence of its "products, services, customers, marketing efforts, or affiliations from the 1990s and 2000s" as irrelevant.  (Defs.' Br. (dkt. #233) 2.)  Specifically, defendants argue that because the likelihood of confusion factors focus on the circumstances of the parties at the "present time," plaintiff's historical evidence of its products and services -- at a time when it was perhaps more aligned with defendants -- is not material to the jury's determination and would be unfairly prejudicial.  (*Id.* at 1-3.)

In its response, plaintiff offers various reasons why Fabick's past use of the mark could be relevant to certain defenses, including abandonment and prior use, and also argues that the "jury should be permitted to consider whether Fabick's historical affiliation with FABCO and Fabick's own prior activities and use of the Marks makes it more or less probable that Defendants' use of the name Fabick Cat is likely to cause confusion."  (Pl.'s Opp'n (dkt. #288) 24.)  While the court agrees that the relevant period of time is the time during which defendants allegedly infringed plaintiff's trademarks -- namely the post July 2015 transition to JFTCO's alleged use of the FABICK mark -- plaintiff's history and its former affiliation with FABCO provides important context.  Regardless, it may be relevant to other elements and defenses, including prior use, and, in particular, the lack of knowledge element to that defense.

Accordingly, this motion is GRANTED IN PART AND DENIED IN PART, although the court would consider an instruction focusing the jury on the appropriate

period of time, consistent with this ruling, and similar to, though substantially more concise that, that offered by defendants.

### G. MIL No. 7: Exclude Argument and Evidence Regarding Items Sold by Lincoln Contractors (dkt. #234)

In this motion, defendants seek to exclude evidence and argument concerning items sold by a separate entity, Lincoln Contractors Supply, which apparently shares space with JFTCO. Specifically, in attempting to rebut defendants' assertion that some JFTCO products are relatively expensive, plaintiff pointed to a $36 fan rental fee as support for a finding of a low degree of care and lack of buyer sophistication. As defendants pointed out at summary judgment, the fan rental is through Lincoln Contractors Supply, not through JFTCO, and specifically its "Fabick Rents" business. For this reason, the court did not discuss the evidence in its summary judgment opinion, deeming sales by Lincoln Contractors Supply immaterial.

Plaintiff's response to the motion is convoluted, although it appears that it may be attempting in part to posit a piercing of the corporate veil theory, contending that the evidence shows that Fabick Rent and Lincoln Contractors Supply "share the same roof" and are meant to be a "one-stop shop for contractors." (Pl.'s Opp'n (dkt. #288) 26.) Plaintiff also contends that Lincoln Contractors Supply sells a sealant product that directly competes with one of Fabick's products. As such, plaintiff argues that "[t]his evidence of cross-selling is most certainly relevant because it relates directly to the likelihood of confusion analysis that is central to this case." (*Id.*) As best as the court can discern, plaintiff's theory is that Lincoln Contractors Supply is the same entity as Fabick Rents, or

at least perceived by consumers to be the same company, and, therefore, consideration of Lincoln Contractors Supply's product line is relevant to the jury's determination of the likelihood of confusion -- particularly, the similarity of products factor.  While the court is skeptical of plaintiff's theory, it nonetheless will RESERVE on this motion pending further argument at the final pretrial conference.

### H. MIL No. 8: Exclude Testimony of Keith Walsh (dkt. #235)

This motion again resurrects a dispute raised in the parties' motions for summary judgment.  As explained in the court's opinion on those motions, the parties dispute the relevance, if any, of Fabick's customer Keith Walsh's apparent confusion, resulting in him visiting a JFTCO location to pick-up a Fabick product.  In support, defendants argue that Walsh's testimony is not relevant because he is not a buyer, and certainly not a sophisticated buyer.  In the alternative, defendants argue that even if Walsh's testimony has some probative value, it is substantially outweighed by the prejudicial impact on defendant.

In response, plaintiff argues that defendants' concerns with Walsh's testimony goes to the weight the jury may place on his testimony, but not to its admissibility.  Furthermore, plaintiff argues that the testimony supports a finding that JFTCO is not referring inquiries concerning Fabick's products to Fabick.  Regardless, Walsh's mistaken belief that Fabick's products came from FABICK CAT and his communication of that belief to customers and potential customers of his employer Madison Auto Trim may be relevant to the jury's determination of whether evidence of actual confusion exists.  For these reasons, the court agrees with plaintiff that defendants' concerns about the Walsh's

testimony go to the weight the jury may place on it, rather than its admissibility. Moreover, the court is hard-pressed to credit defendants' claims of *undue* prejudice. Defendants effectively clarified Walsh's limited role at Madison Auto Trim in his deposition, and they can present that same testimony to the jury for their consideration. Accordingly, this motion is DENIED.

## I. MIL No. 9: Exclude Testimony, Evidence and Argument Related to Jeré Fabick's Life, Finances, Salary and/or Employment Agreement (dkt. #236)

Defendants seek an order excluding any evidence or argument about "Jeré Fabick's personal life, current salary, finances and/or employment agreement," arguing that it is not material to any of the claims or defenses at issue in this lawsuit and could be unfairly prejudicial to defendants. (Defs.' Mot. (dkt. #236) 1.) Specifically, defendants are concerned about evidence of relative wealth of the defendants inappropriately influencing the jurors.

In response, plaintiff concedes that information about Jeré's personal life and general finances is not relevant, but argues that evidence of his current salary from JFTCO and the terms of that employment agreement, which were negotiated as part of JFTCO's purchase of FABCO's assets, are relevant to plaintiff's contributory infringement claim. Specifically, plaintiff argues that this evidence is relevant to demonstrating "an intent on the part of FABCO to induce or encourage JFTCO to infringe the trademark," and given the significant money at stake, that Jeré "had a strong incentive . . . to make sure this transaction went through to the satisfaction of JFTCO, including assisting JFTCO with the transition to the new name." (Pl.'s Opp'n (dkt. #288) 31, 32.) Plaintiff also argues that

this evidence is relevant to the prior use affirmative defense, because the more money at stake, "the more likely it is that you would expect an investigation and that any knowledge that the parties did have would be explored further to make sure that no bar to using the name Fabick existed." (*Id.* at 33.)

In the end, plaintiff's theories as to how this evidence is relevant to its claims or defendants' defenses is far too attenuated from the issues the jury will be asked to consider to be relevant, and even if somehow probative, it is far outweighed by the risk that the jury may be unduly distracted or prejudiced by this evidence. Plaintiff is free to ask Jeré about his general motivations in selling FABCO and his interest in having the deal go through, but the total sale price, his personal life or specific monetary stake in the outcome of the deal and monetary compensation for any ongoing employment or other arrangement are not relevant to the jury's determination of contributory infringement, especially in light of plaintiff's own evidence that Jeré was interested in having the business continue under the FABCO name, and again any even arguable, probative value is far outweighed by the prejudicial effect of such information[5]

Accordingly, this motion is GRANTED.

---

[5] Plaintiff's other argument as to the relevance of this evidence on the basis of defendants' prior use defense makes *no* sense. With respect to that defense, the question is not whether defendants *should* have known about Fabick, Inc.'s use of the FABICK mark; rather, the question the jury will be asked is whether defendants knew of plaintiff's use of the mark.

## J. MIL No. 10: Exclude Testimony, Evidence and Argument Related to What Joe Fabick, Sr. Knew About the FABICK Mark (dkt. #237)

As detailed in the court's prior opinion and order on summary judgment, FABCO's prior President and CEO Joe Fabick, Sr., was involved in the creation of Fabick, Inc. Joe passed away in 2010. Defendants seek an order excluding any evidence or argument as to what he knew *personally* about the FABICK mark given that plaintiff "has proffered no witness with actual, personal knowledge of what Joe Fabick, Sr. knew about the FABICK mark or the registration of that mark." (Defs.' Mot. (dkt. #237) 2.) Plaintiff argues the same in opposition to this motion. (Pl.'s Opp'n (dkt. #288) 34 ("Defendants' argument is based entirely on the false premise that there is no testimony by someone with personal knowledge about what Joe Fabick, Sr., knew.").)

From the court's review of the evidence submitted at summary judgment, Jay Fabick appears to have personal knowledge into Joe's knowledge of the FABICK mark. While the court will strike testimony or exclude evidence not based on personal knowledge, therefore, the court sees no basis to exclude any evidence or argument relating to Joe's knowledge of the FABICK marks outright. As such, this motion is DENIED, without prejudice to defendants raising specific, well-founded objections to particular testimony or exhibits.

## K. MIL No. 11: Exclude Testimony and Evidence Regarding Statements Made During Settlement Negotiations (dkt. #238)

Next, defendants seek to exclude testimony and other evidence concerning conversations between plaintiff's general counsel Elizabeth Fabick, JFTCO's Vice President of Marketing Tom Svetnicka and JFTCO's Senior Vice President Scott Borlinghaus in late 2015 and early 2016 on the basis that these discussions involved possible settlement of

the trademark infringement claims raised in this lawsuit and are, therefore, barred under Federal Rule of Evidence 408.

Plaintiff opposes the motion for two, independent reasons. *First*, plaintiff argues that the discussions pre-date any contemplated litigation and, therefore, do not constitute "compromise offers or negotiations." (Pl.'s Opp'n (dkt. #288) 36.) *Second*, and somewhat more persuasive, plaintiff contends that the evidence is admissible under subsection 408(b)'s exception allowing admission of evidence of settlement offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Here, plaintiff argues the evidence of what was said before litigation is relevant, "rebuttal evidence in establishing that Defendants had knowledge of Fabick's prior use of the mark, as well as the continued existence and activity of Fabick under that name." (*Id.* at 37.)

Here, the court agrees with plaintiff that the content of those discussions arguably does not fall within Rule 408, but, regardless, plaintiff seeks to admit it for a permissible reason under that rule. As such, this motion is RESERVED subject to plaintiff providing a formal proffer of the evidence that plaintiff will seek to introduce.

### L.  MIL No. 12: Exclude Argument and Evidence Relating to FABCO's Alleged Sale of Rights to the Fabick Name (dkt. #239)

Defendants next seek an order excluding any argument and evidence relating to FABCO's alleged sale of rights to the Fabick name as part of the 2015 asset purchase agreement with JFTCO. The court already dealt with this issue as part of its summary

judgment opinion and order, finding no basis for a jury to find that FABCO sold any rights to the Fabick name to JFTCO as part of the Asset Purchase Agreement. (11/8/17 Op. & Order (dkt. #221) 61 & 63 n.31.) In its response, plaintiff contends that this theory appears limited to a fair use defense, which it maintains was mooted by the court's dismissal of any direct infringement count against FABCO, and as such, plaintiff does not oppose the motion in limine. The court, therefore, will GRANT this motion as unopposed, though the parties are free to seek clarification if plaintiff's understanding of the possible relevance of the fair use defense is mistaken or too narrow.

### M. MIL No. 13: Exclude Testimony and Argument as to Plaintiff's Epoxy Business Slowdown as Theory of Actual Confusion (dkt. #240)

Defendants' final motion covers now familiar ground: defendants seek an order excluding testimony and argument as to a purported slowdown in plaintiff's epoxy business as evidence of actual confusion. (11/8/17 Op. & Order (dkt. #221) 49-50.) At summary judgment, the court concluded that plaintiff had failed to put forth sufficient evidence to support a jury finding that any slowdown in the epoxy business was caused by actual confusion or that such a finding could support an award of lost profits.

In its response to MIL No. 13, plaintiff acknowledges the court's earlier ruling, and represents that "it will not attempt to recover any lost profits based on a loss in the epoxy business." (Pl.'s Opp'n (dkt. #288) 39.) Nonetheless, plaintiff contends that "the epoxy business is one of Plaintiff's line of business and is likely to come up at trial," especially given that it is connected to Department of Transportation projects, where the parties have overlapping customers.

As the court understands defendant's motion, it seeks only to exclude evidence and argument with respect to the actual confusion prong of the likelihood of confusion in the epoxy business. As such, this motion is GRANTED, but plaintiff remains free to reference the epoxy business in describing its customer base and any overlap with defendants, specifically for purposes of showing how the similarly-of-products and areas-and-manner-of-concurrent use factors weigh in favor of a finding of likelihood of confusion.

ORDER

IT IS ORDERED that:

1) Plaintiff Fabick, Inc.'s motions in limine (dkt. #245) are GRANTED IN PART, DENIED IN PART and RESERVED IN PART as set forth above.

2) Defendants FABCO Equipment, Inc., and JFTCO, Inc.'s motion in limine no. 1 (dkt. #228) is GRANTED as set forth above.

3) Defendants' motion in limine no. 2 (dkt. #229) is GRANTED as set forth above.

4) Defendants' motion in limine no. 3 (dkt. #230) is GRANTED as set forth above.

5) Defendants' motion in limine no. 4 (dkt. #231) is GRANTED as set forth above.

6) Defendants' motion in limine no. 5 (dkt. #232) is DENIED as set forth above.

7) Defendants' motion in limine no. 6 (dkt. #233) is GRANTED IN PART AND DENIED IN PART as set forth above.

8) Defendants' motion in limine no. 7 (dkt. #234) is RESERVED as set forth above.

9) Defendants' motion in limine no. 8 (dkt. #235) is DENIED as set forth above.

10) Defendants' motion in limine no. 9 (dkt. #236) is GRANTED as set forth above.

11) Defendants' motion in limine no. 10 (dkt. #237) is DENIED as set forth above.

12)  Defendants' motion in limine no. 11 (dkt. #238) is RESERVED as set forth
     above.

13)  Defendants' motion in limine no. 12 (dkt. #239) is GRANTED as set forth
     above.

14)  Defendants' motion in limine no. 13 (dkt. #240) is GRANTED as set forth
     above.

Entered this 4th day of December, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge