IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FABICK, INC.,

                    Plaintiff,                          OPINION AND ORDER

       v.
                                                        16-cv-172-wmc
JFTCO, INC.,

                    Defendant.

During the pretrial conferences, the parties raised various objections and proposed modifications to the court's draft closing instructions. Having now considered the parties' arguments, the court issues this opinion and order explaining its reasons for accepting or rejecting those objections and proposed modifications. The court will also circulate revised closing instructions and special verdict consistent with this opinion, other rulings by the court and stipulation of the parties.

## I. "Somehow become connected to"

In the likelihood of confusion instruction, plaintiff seeks to add language allowing for a likelihood of confusion if defendant used the FABICK mark in a manner that is likely to cause confusion "that plaintiff has somehow become connected to JFTCO." The first draft of the instruction, consistent with the pattern instruction, directed the jury to consider only whether defendant used the FABICK mark in a manner that is likely to cause confusion "as to the source of the origin of plaintiff's product."

Plaintiff contends that the "somehow become connected to" language is proper to use in the context of a reverse confusion claim, which plaintiff is pursuing here. In support of this addition, plaintiff directs the court to *Sands, Taylor & Wood Co. v. Quaker Oats Co.*,

978 F.2d 947 (7th Cir. 1992), the first case in which the Seventh Circuit recognized a reverse confusion claim. In that opinion, the court explained that:

> Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured because
>
>> [t]he public comes to assume that the senior user's products are really the junior user's or *that the former has become somehow connected to the latter*. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.
>
>> *Ameritech, Inc. v. Am. Info. Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987) . . . Although this court has not previously recognized reverse confusion as the basis for a claim under the Lanham Act, several other circuits have endorsed the concept. We agree with those courts that "the objectives of the Lanham Act—to protect an owner's interest in its trademark by keeping the public free from confusion as to the source of goods and ensuring fair competition—are as important in a case of reverse confusion as in typical trademark infringement." *Banff, Ltd.* [*v. Federated Dep't Stores, Inc.*], 841 F.2d [486,] 490 [(2d Cir. 1988)]. We therefore hold that reverse confusion is a redressable injury under the Lanham Act.

*Id.* at 957-58 (emphasis added) (footnote omitted).

Defendant offers three core objections to the addition of this language. *First*, defendant argues that the court should simply stick with the pattern instruction. While it is the court's practice to rely heavily on the pattern instructions, however, the court is inclined to add the requested additional or modified language justified by the facts and law of an applicable case, particularly if the ruling is by the Seventh Circuit or United States Supreme Court. *Second*, defendant argues that the *Sands* citation to the requested language

2

was in the context of talking about either the strength of the mark or the injury experienced by reverse confusion, but this is an unjustifiably narrow reading of this opinion. Indeed, in the section quoted above, the Seventh Circuit is generally describing the nature of a reverse confusion claim. Accordingly, the court sees no error in adopting the same language for a similar confusion claim here.[1] *Third*, defendant argues that the use of the "somehow connected to" language could open the door to the jury impermissibly considering Fabick and FABCO Equipment's prior connection in finding a likelihood of confusion, citing to *Shakey's Inc. v. Covalt*, 704 F.2d 426 (9th Cir. 1983). In *Shakey's*, the Ninth Circuit cut off a finding of a likelihood of confusion based solely on a shared history between the parties, explaining "[t]he law of unfair competition does not impose upon [the defendant] a duty to ensure that all customers are aware that they are no longer affiliated with Shakey's, but merely a duty not to promote the perpetuation of the perception that they are." *Id.* at 432. The court is receptive to this concern up to a point.

As such, the court will change the instruction as reflected in the bolded addition below:

> To succeed on its claim that defendant JFTCO infringed plaintiff's trademark and service mark, plaintiff must prove by a preponderance of the evidence that defendant JFTCO used the FABICK mark in a manner that is likely to cause confusion as to the source or origin of plaintiff's product **or that plaintiff has somehow become connected to JFTCO. In making this determination, however, you may *not* rely on**

---

[1] For this same reason, the court rejects defendant's suggested modification of Question No. 1 on the draft special verdict, adding the language "as to the source of origin of Plaintiff's good or services" to the end of that question. (Defs.' Submission (dkt. #342).) Regardless, the court prefers the more straight-forward question simply asking if plaintiff has proven the likelihood of confusion element. The instructions themselves detail what the jury may consider in answering this question.

confusion caused by FABCO's prior ownership of Fabick, Inc.[2]

## II. Evidence of actual confusion entitled to substantial weight

Plaintiff also requested a modification to the list of factors the jury may consider in determining whether there is a likelihood of confusion, specifically requesting that the court point out that evidence of actual confusion is "entitled to substantial weight." There is support for this proposition, at least in the context of a judge making the likelihood of confusion determination in the context of a preliminary injunction or as the ultimate trier of fact. *See, e.g., CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001) (reviewing TTAB determination); *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090 (7th Cir. 1988) (affirming grant of preliminary injunction).

The pattern instructions, however, do not include this language, nor could the court find a Seventh Circuit case embracing this additional language in instructing the jury on this element in any trademark infringement case, not to mention a reverse confusion case like that at issue here. More problematic, the pattern instruction *does* provide that "[t]he weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion." Seventh Cir. Pattern Jury Instructions § 13.1.2.3. To add plaintiff's requested language would conflict with this express instruction in the pattern jury instructions. As such, the court opts to not make this requested modification.

---

[2] The court also will include the same "somehow become connected to JFTCO" in the overview section of the instructions for consistency's sake.

### III. Appropriate versus substantial segment for purposes of determining prior use

The court previously rejected plaintiff's proposed instructions on continuous prior use. More specifically, the court rejected plaintiff's assertion that defendant must show "market penetration" of the FABICK mark, finding such a requirement was not adopted by the Seventh Circuit. Indeed, the court could find only one Seventh Circuit case discussing such a requirement, and that was in a *dissent* appearing to advocate a lower, "de minimis" use requirement. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 510 (7th Cir. 1992) (Cudahy, J., dissenting). Instead, in the draft circulated to the parties, the court relied upon Comment 2 of the "ownership and priority" instruction in Section 13.1.2.1 of, and specifically its citation to *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427 (7th Cir. 1999), which explained that "[t]he party seeking to establish appropriation of a trademark must show first, adoption, and second, 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [the adopter of the mark.'" *Id.* at 433-34 (citing *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979)).

Nevertheless, at the final pretrial conference, plaintiff asked the court to modify the proposed language of what constitutes "use" as follows:

> 2. JFTCO's parent corporation, the John Fabick Tractor Company, used the FABICK mark in Wisconsin and Michigan, including the Upper Peninsula of Michigan, in a way sufficiently public to identify or distinguish the marked goods in ~~an appropriate~~ substantial segment of the public mind;

As a result, the court ordered additional briefing on this issue, which has convinced the court that plaintiff's view of the required prior "use" does not reflect Seventh Circuit caselaw. In determining prior use -- specifically, in determining whether prior common law

trademark rights exist -- the defendant need not establish market penetration, nor for that matter, a "substantial" segment associated the mark with the defendant, nor even that defendant's mark has gained "notoriety," as the Seventh Circuit recently characterized it.[3] *See S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 666 (7th Cir. 2016) ("Ownership and notoriety are two different things. Thus, to prove ownership, a party need not show that the item in question has gained wide public recognition."). Instead, to demonstrate the continuous prior use defense, "a party must show first, adoption, and second, 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 666 (citing *Johnny Blastoff*, 188 F.3d at 433–34).[4]

Accordingly, the court rejects plaintiff's proposed change, keeping its original language, while adding "as that of the John Fabick Tractor Company" to the end of element 2 above for the sake of completeness. The court will also add an additional paragraph to provide more guidance to the jury on what constitutes "use" and the "appropriate segment" as follows:

> There are two additional instructions on how to think about element two. *First*, in considering whether defendant has proven the required use, you may consider the volume of sales

---

[3] To the extent plaintiff is arguing that there is a different standard of use required under the common law to rebut plaintiff's state common law claim, this argument also fails. As the court explained in both *Johnny Blastoff* and *S.C. Johnson*, the continuous prior use defense in the Lanham Act context, under 15 U.S.C. § 1115(b)(5), similarly turns on whether defendant has "previously established common law trademark rights." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (quoting *Johnny Blastoff*, 188 F.3d at 435).

[4] In two places the court in *Johnny Blastoff* used the term "substantial portion of the public" or "significant portion of the public," the former referred to the district court's finding and the latter referring to the evidence the defendant marshalled. Neither use, however, reflects the standard required by the Seventh Circuit in *Johnny Blastoff*, or, more recently, in *S.C. Johnson*.

> of products bearing the FABICK mark and the amount of
> advertising, promotion or publicity relating to the products
> bearing the FABICK mark. Defendant, however, need not
> show either high volume of sales or wide recognition. *Second*,
> the parties disagree as to what the "appropriate segment" is
> and part of your job will be to decide what that market segment
> is based on evidence and argument of the parties.

*See* 7th Circuit Pattern Jury Instructions § 13.1.2.1; *S.C. Johnson*, 835 F.3d at 669 (citing

*Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Med. Co.*, 82 F.

321, 326 (7th Cir. 1897)).


## IV. Meaning of "substantial portion" for purposes of determining acquired distinctiveness of FABICK mark

Unlike the prior use instruction, the "acquired distinctiveness" or secondary

meaning instruction does require plaintiff to demonstrate that "[a] *substantial portion* of the

consuming public identifies plaintiff's FABICK mark with a particular source, whether or

not consumers know who or what that source is (the consuming public consists of people

who may buy or use, or consider buying or using, the product or similar products)."

(Court's Draft Instructions (citing 7th Circuit Pattern Jury Instructions § 13.1.2.2.4)

(emphasis added).) The court requested input from the parties as to an additional

instruction defining or otherwise assisting the jury in determining what constitutes a

"substantial portion."

Neither party offered much guidance. Instead, plaintiff used the opportunity to

attempt to push its "substantial segment" change in the continuous prior use context, citing

to Third Circuit cases for language to assist the jury in determining whether the John Fabick

Tractor Company had obtained "market penetration" in Wisconsin and the UP with use

of the FABICK mark, an argument that the court has already rejected. In contrast, defendant contends that additional clarification is not required, because the jury can simply rely on the four factors the instructions provide in determining whether plaintiff's FABICK mark has acquired distinctiveness. Based on these responses, and the fact that "substantial" is a familiar term, the court will simply stick with the pattern instruction and leave it to the parties to argue what constitutes "substantial portion."

ORDER

IT IS ORDERED that the parties' proposed modifications to the closing instructions are adopted or rejected for the reasons provided above.

Entered this 13th day of December, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge