IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FABICK, INC.,

                    Plaintiff,                        OPINION AND ORDER

     v.

                                                16-cv-172-wmc

JFTCO, INC.,

                    Defendant.

In this trademark infringement lawsuit, the jury found in favor of plaintiff Fabick, Inc., on its Lanham Act trademark infringement claim, found against it on a common law infringement claim, and rejected defendant JFTCO, Inc.'s affirmative defenses. (Dkt. #365.)[1] During the trial, the court further barred plaintiff from pursuing monetary damages, limiting it to equitable relief. (12/13/17 Op. & Order (dkt. #352).) With that brief overview, this opinion and order addresses the following, post-trial motions: (1) defendant's request for judgment in its favor, positing various grounds for relief; and (2) plaintiff's motions for injunctive relief, corrective advertising, attorney's fees and costs (dkt. ##376-77).

For the reasons that follow, the court will: (1) deny defendant's motion for judgment as a matter of law or for a new trial and enter judgment in its favor on the common law infringement claim consistent with the jury's verdict; (2) order defendant to provide notice and disclaimers, rather than enjoin defendant's use of the FABICK

---

[1] On the eve of trial, plaintiff dismissed its claims against co-defendant FABCO Equipment, Inc. (Dkt. #343.)

trademark; (3) deny plaintiff's motion for attorney's fees under Federal Rule of Civil

Procedure 37(c)(2); and (4) award plaintiff costs.


## OPINION

### I. Defendant's Motion for Judgment against Plaintiff

#### A. Jury verdict as advisory opinion

As an initial matter, defendant argues that the court is not bound by the jury verdict,

because "[w]hen the court eliminated all claims for monetary relief the day before sending

this case to the jury, the only remedy was equitable—rendering the jury's verdict advisory."

(Def.'s Br. (dkt. #379) 8.)  As such, defendant contends that the court is required to make

its own findings of facts and conclusions of law as required under Federal Rule of Civil

Procedure 52(a)(1).  While the court agrees that the elimination of a damages claim also

eliminated the parties' right to a jury trial, *see, e.g.*, *Kramer v. Banc of Am. Sec., LLC*, 355

F.3d 961, 966 (7th Cir. 2004), the court rejects defendant's argument that this renders

the jury verdict advisory.

In support of its argument, defendant cites to a single Sixth Circuit case from 1974.

*See Hyde Props. v. McCoy*, 507 F.2d 301, 306 (6th Cir. 1974).  While the case has been

cited a handful of times in the Sixth Circuit for this proposition, the holding has not been

embraced more broadly, and, critically, the court could find no support in the Seventh

Circuit for such an approach.  Indeed, as plaintiff points out in its opposition brief, more

recent Sixth Circuit cases have even rejected this approach. *See, e.g., Thompson v. Parkes*, 963 F.2d 885, 888 (6th Cir. 1992).[2]

Even if the holding in *Hyde Properties* had merit under the specific facts of that case, the facts are different here. In its decision, the Sixth Circuit cited to Federal Rule of Civil Procedure 39(c) as the sole support for its holding. That rule provides in pertinent part:

> **(c) Advisory Jury; Jury Trial by Consent.** In an action not triable of right by a jury, the court, on motion or on its own:
>
> (1) may try any issue with an advisory jury; or
>
> (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.

In *Hyde Properties*, the defendant moved to strike the jury trial demand *before* the case proceeded to a jury trial. 507 F.2d at 304.

Here, in contrast, both defendants did not just consent to but *demanded* a jury trial in their respective answers (dkt. ##23, 24), and the remaining defendant JFTCO implicitly consented to the case proceeding to a jury even after the court barred plaintiff from pursuing monetary damages. Nevertheless, suddenly, just hours *after* the jury returned a liability verdict against it, defendant for the first time raised its objection to the issues tried to a jury being binding. (Dkt. #357.) Too late. Defendant JFTCO consented to being bound by a jury verdict both explicitly and implicitly under Fed. R. Civ. P. 39(c)(2).

---

[2] Only a year after the *Hyde Properties* decision, another Sixth Circuit panel also called into question the precedential value of that holding in light of a subsequent settlement by the parties in *Hyde* themselves. *See Morelock v. NCR Corp.*, 546 F.2d 682, 690 (6th Cir. 1976), *vacated on other grounds*, 435 U.S. 911 (1978).

JFTCO cannot now withdraw its consent because it is unhappy with the outcome. *Cf.*

*Kramer*, 355 F.3d at 967 (noting that defendant can consent to jury trial even where no

right exists, but affirming district court's striking of jury trial where defendant, who had

originally consented to a jury trial, moved to strike the demand *before* trial). Accordingly,

the court rejects defendant's argument that the court should treat the jury's verdict as

advisory.[3]

## B. Challenges to the jury verdict itself

Setting that initial issue aside, defendant raises three essential challenges to the

jury's verdict under Federal Rules of Civil Procedure 50 and 59(a). Rule 50 permits the

court to grant judgment to a non-prevailing party as a matter of law where there is no

"legally sufficient evidentiary basis" to uphold the jury's verdict on that issue. In reviewing

a Rule 50 motion, the court will "examine the evidence presented, combined with any

reasonably drawn inferences, and determine whether the combination sufficiently supports

the verdict when viewed in the light most favorable to the non-moving party." *E.E.O.C. v.*

*AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). The court does not make credibility

determinations or weigh the evidence, though it must assure that more than "a mere

scintilla of evidence" supports the verdict. *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492

F.3d 853, 859 (7th Cir. 2007). The court may "reverse the verdict only if no rational jury

could have found for the prevailing party." *AutoZone, Inc.*, 707 F.3d at 835.

---

[3] Regardless, for the reasons set forth below, the court would have reached the same result as to
liability.

4

Under Rule 59(a), a court may grant a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Whitehead v. Bond*, 680 F.3d 919, 927 (7th Cir. 2012). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006) (internal quotation marks omitted). "Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence." *Whitehead*, 680 F.3d at 925.

### i. continuous prior use defense

The bulk of defendant's motion concerns the jury's rejection of its continuous prior use defense. The jury was instructed to find in defendant's favor on this defense provided it proved by a preponderance of the evidence the following five elements:

1. the consuming public views the John Fabick Tractor Company and JFTCO as one entity;

2. JFTCO's parent corporation, the John Fabick Tractor Company, used the FABICK mark in Wisconsin and the Upper Peninsula of Michigan in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as that of the John Fabick Tractor Company;

3. that use occurred before March 25, 1994, when plaintiff applied for registration of the FABICK mark, and continued, either by the John Fabick Tractor Company or, more recently, by defendant itself, up until trial;

4. the John Fabick Tractor Company began using the FABICK mark without knowledge of plaintiff's use; *and*

5. the John Fabick Tractor Company's prior use of the FABICK mark and JFTCO's current use of the FABICK mark create the same, continuing commercial impression so that consumers consider both as the same mark.

(Closing Liability Instr. (dkt. #363) 6-7.)  The court further instructed the jury that in deciding whether these elements were met, it may consider sales volumes and the amount of advertising, although consistent with the Seventh Circuit's then-recent decision in *S.C. Johnson & Son, Inc. v. Nutraceutical Corporation*, 835 F.3d 660 (7th Cir. 2016), "[d]efendant, however, need not show either high volume of sales or wide recognition." (*Id.* at 7.)

In its brief in support of the 50(b) motion, defendant sets forth in great detail evidence of its prior use in the Wisconsin and the UP, including the use of the Fabick mark before 1994:  (1) in sales associated with the John Fabick Tractor Company's pipeline business, and sales and rental of used equipment; (2) in customer communications (*e.g.*, sale proposals); (3) on the sold equipment typically in the form of the capital "F" Fabick decal; and (4) in advertising.  (Def.'s Br. (dkt. #379) 27-42.)

While certainly persuasive, plaintiff effectively poked holes in this evidence at trial, limiting both its weight and relevance.  Specifically, as set forth in its response to defendant's post-verdict motion, plaintiff introduced testimony of Mike Jansen, an employee of defendant, and argument calling into question defendant's proof of sales by the John Fabick Tractor Company in both Wisconsin and the UP before 2002.  Plaintiff also pointed out that defendant was unable to show *any* verifiable sales before 2002 in the UP and that the sales data showing *billing* addresses in Wisconsin did not indicate whether the equipment was actually sold in or delivered to that state.  (Trial Tr. (dkt. #370) 44-46.)  Plaintiff further pointed out that the sales figures were not necessarily evidence of the *Fabick* name itself being identified with the John Fabick Tractor Company in the public consuming mind, given that despite the dollar volume of those sales, the high price of the

individual heavy equipment actually sold could have translated into just a few sales in number, especially when compared to FABCO sales during this same period of time. (Trial Tr. (dkt. #372) 116, 119.) As for use of the Fabick name in the pipeline market, plaintiff presented evidence and argument that this was a specialty, niche market, which ceased using the Fabick name altogether in 2005, and for which the public mind similarly failed to form an identity between the use of the Fabick mark and the John Fabick Tractor Company. (Trial Tr. (dkt. #369) 90; Trial Tr. (dkt. #372) 74-75, 80; Trial Tr. (dkt. #270) 85-86.) Finally, plaintiff pointed out that while defendant presented evidence of advertising using the Fabick name, there was little evidence of that advertising in Wisconsin and the UP before 1994, and even then only ushered in through Fabick employees, not consumers. (Trial Tr. (dkt. #369) 61-62.)

More critically, the jury was instructed to consider whether the defendant's evidence of prior use was sufficient "to identify or distinguish the marked goods *in an appropriate segment of the public mind* as that of the John Fabick Tractor Company." (Closing Liability Instr. (dkt. #363) 6-7) (emphasis added). In its closing argument, counsel for plaintiff argued persuasively that any sales of used equipment bearing the Fabick decal in Wisconsin and the UP during most of the relevant period was dwarfed by the sale of new equipment by FABCO, all of which prominently displayed the FABCO mark, and permitted the jury to conclude that only a "small" segment of the public mind would associate the Fabick mark with the John Fabick Tractor Company. (Trial Tr. (dkt. #270) 84-85.) Judging by one of the jury's question, it also appears to have appropriately grappled with this same "public mind" component of the continuous use defense during deliberations, initially even

indicating that it could not reach a unanimous decision on one of the elements of the defense. (Court Exs. 2, 3 (dkt. #306-2, 360-3).)

While perhaps a close call, a jury could reasonably conclude, as it apparently did here, that the John Fabick Tractor Company did *not* use the FABICK mark in Wisconsin and the UP "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as that of the John Fabick Tractor Company." (Closing Liability Instr. (dkt. #363) 6-7.) Given the narrow, niche markets in which the John Fabick Tractor Company operated, the court agrees.

Having found a legally sufficient evidentiary basis for the jury to find against defendant on element two of its continuous prior use defense, the court need not reach defendant's arguments as to the evidence offered on tacking and viewing JFTCO and the John Fabick Tractor Company as one entity, though here, too, plaintiff presented evidence and argument from which the jury reasonably could have concluded that defendant failed to meet its burden of proof on these elements as well.

### ii.    acquired distinctiveness

While the jury found in favor of plaintiff on all questions relevant to its Lanham Act trademark infringement claim, the jury still answered "No" to the second question posed on the liability verdict: "Did plaintiff prove by a preponderance of the evidence that its unregistered FABICK marks have acquired distinctiveness?" Thus, the jury rendered a verdict in defendant's favor on the common law infringement claim. Nonetheless, defendant chose to brief this issue in its motion, presumably because its primary position is that the court should view the entire jury verdict as advisory and, therefore, should make

its own findings of facts and conclusions of law as to that claim (in particular, as to the acquired distinctiveness element). (Def.'s Br. (dkt. #379) 48-50.) Because the court has rejected defendant's request to view any part of the jury's liability verdict as advisory, including the answer to Question No. 2, the court will simply grant defendant's motion for judgment as to this claim consistent with that verdict, even though the motion was entirely unnecessary.

### iii. likelihood of confusion

Next, defendant challenges the jury's finding that defendant is now using the FABICK mark in a manner that is likely to cause confusion. The focus of defendant's argument is on the court's instruction that: "[t]o succeed on its claim that defendant infringed plaintiff's trademark and service mark, plaintiff must prove by a preponderance of the evidence that defendant used the FABICK mark in a manner that is likely to cause confusion or mistake as to the source or origin of plaintiff's product *or that plaintiff has somehow become connected to JFTCO*." (Closing Liability Instr. (dkt. #363) 4 (emphasis added).) As it did during trial, defendant objects to the inclusion of the italicized language, arguing that the jury instruction should have been limited to finding a likelihood of confusion with respect to the source or origin of plaintiff's products. The court has already addressed this challenge extensively and sees no reason to revisit it here. For the reasons previously provided, the court finds the disputed language consistent with the Seventh Circuit's treatment of reverse confusion cases, like this one. (*See discussion* 12/13/17 Op. &

Order (dkt. #351) 1-4 (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957-58 (7th Cir. 1992)).[4]

Next, defendant challenges the jury's factual findings as to the particular factors relevant to the likelihood of confusion claim, and the jury's weighing and reliance on those factors in ultimately finding in favor of plaintiff. As the court explained extensively in its opinion and order on the parties' cross motions for summary judgment, there were genuine issues of material fact that prevented summary judgment in either party's favor. (11/8/17 Op. & Order (dkt. # 221) 51 ("In considering all of these factors, the court concludes that evidence of actual confusion weighs heavily in favor of plaintiff, but the other factors are either a wash, weigh in favor of defendants, or turn on fact issues (*e.g.*, salient portion of the mark in assessing similarity or overlap in customers and marketing channels, among other discrete factual disputes).").) At trial, plaintiff presented compelling evidence of actual confusion in the form of mistaken phone calls, emails and other communications. Viewing this evidence in the light most favorable to plaintiff, as the court must, the court finds more than "a mere scintilla of evidence" to support the verdict. *Hossack*, 492 F.3d at 859.[5]

---

[4] The court also notes that it added the sentence "In making this determination, however, you may *not* rely on confusion caused by FABCO's prior ownership of Fabick, Inc.," to properly focus the jury on the events after JFTCO began to operate in Wisconsin and the UP, rather than the historical relationship between Fabick and FABCO Equipment, Inc. (12/13/17 Op. & Order (dkt. #351) 3-4.)

[5] Even viewed *de novo*, plaintiff's evidence of confusion following JFTCO's reintroduction of the Fabick mark is fairly overwhelming.

Finally, defendant challenges plaintiff's evidence of actual confusion, arguing that it failed to show "actual confusion as to the *source of Plaintiff's products and services*." (Def.'s Br. (dkt. #379) 63.) As an initial point, to the extent this argument is simply a regurgitation of defendant's jury instructions challenge discussed above, the court rejects it for the same reasons. Actual confusion as to whether the parties are "somehow connected" is relevant to the jury's finding of likelihood of confusion in this reverse confusion case. Defendant persists that this evidence does not really show actual confusion, but as the court explained in its summary judgment opinion, "[t]his argument, however, simply supports a finding that any confusion was quickly resolved, not that there was no confusion in the first instance." (11/8/17 Op. & Order (dkt. #221) 48-49.)

Here, defendant was free to argue to the jury that the evidence of actual confusion was not as to the source or origin of plaintiff's products, or that the confusion was easily resolved. Indeed, defendant made those very arguments. Nonetheless, the jury was within its reasonable discretion to reject those arguments and place weight on plaintiff's evidence of actual confusion to find this element satisfied. For this reason, the court finds no basis to enter judgment as a matter of law or require a new trial.[6]

### iv.    naked licensing

Defendant further seeks judgment as a matter of law on their naked licensing defense, arguing that the evidence required a finding in defendant's favor on that defense.

---

[6] Although the court considered much of the confusion as to the identity of the source of plaintiff's product and services likely to inure to plaintiff's benefit, given JFTCO's positive and growing reputation, it does not discount the demonstrated confusion experienced at the point of sale and at least the potential for lost business by virtue of customer frustration.

However, it was defendant's burden to prove by *clear and convincing* evidence that plaintiff failed to exercise reasonable control over quality. In its brief, defendant focuses on plaintiff licensing of the Fabick trademark to Fabick Equipment, a heavy construction equipment brokerage business operated by yet another member of the Fabick family, Jack Fabick. Defendant offered evidence of Fabick Equipment's use of the Fabick name in its website name, www.fabick.net, and on the website itself. (Def.'s Br. (dkt. #379) 69-70.) Defendant also offered testimony that plaintiff had not exercised control over Fabick Equipment's other uses of the Fabick trademark. (*Id.* at 70-71.)

In response, plaintiff offered evidence and argued to the jury that this use and relaxed monitoring was explained by Jack Fabick's familial relationship with Jay, Jay's prior ownership stake in the Fabick Equipment business, and the limited scope of Fabick Equipment's business. Each of those explanations has solid footing in trademark law. *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991) ("Where the particular circumstances of the licensing arrangement persuade us that the public will not be deceived, we need not elevate form over substance and require the same policing rigor appropriate to more formal licensing and franchising transactions. Where the license parties have engaged in a close working relationship, and may justifiably rely on each parties' intimacy with standards and procedures to ensure consistent quality, and no actual decline in quality standards is demonstrated, we would depart from the purpose of the law to find an abandonment simply for want of all the inspection and control formalities."). Regardless, especially in light of the heightened standard of proof, this evidence and

argument forms a sufficient basis for the trier of fact to reject this defense and for the court to reject defendant's motion for judgment or for a new trial on its naked license defense.

## II. Plaintiff's Motion for Post-Verdict Relief

As a result of the jury verdict in its favor, plaintiff also seeks post-trial, equitable relief in the form of: (1) a permanent injunction; (2) a corrective advertising award of $500,000; (3) attorney's fees as a sanction under Federal Rule of Civil Procedure 37; and (4) costs. The court addresses each request in turn below.

### A. Injunctive relief

Plaintiff argues for a broad injunction that would prohibit defendant from using the name "Fabick" as part of its business name in any way, except for disclosing that it is affiliated with the John Fabick Tractor Company and not Fabick, Inc. In seeking a permanent injunction, plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would be disserved by a permanent injunction." *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006). In trademark infringement cases, the first two elements are typically deemed satisfied, and a permanent injunction barring the infringer from use of the trademark is the "usual and normal remedy." *See generally* 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:1 (5th ed. 2018).

Even so, there are at least two reasons why the plaintiff's request for a sweeping injunction is not warranted here. *First*, defendant submitted substantial, undisputed evidence that in applying for the Fabick trademark, plaintiff failed to disclose the John Fabick Tractor Company's long-standing use of the Fabick name in selling and servicing new and used heavy equipment for generations. Instead, as detailed in summary judgment briefing and demonstrated at trial, Jay Fabick, as President of plaintiff, represented in a supporting declaration to the PTO in 1994 that:

> no other person, firm, corporation, or association, to the best of his or her knowledge or belief, has the right to use such mark in commerce either in the identical form of the mark or in such near resemblance to the mark as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive . . . .

(Trial Ex. 585 at 33.) At trial, Jay acknowledged his familiarity with the John Fabick Tractor Company, having been employed by and owned stock in that company. (Trial Tr. (dkt. #367) 98.) Jay also testified that he was aware that the John Fabick Tractor Company had in the past used the singular "Fabick" on stickers, in sales brochures and other promotional items, on business cards and in communications. (*Id.* at 132-41.) Jay also testified that he knew the John Fabick Tractor Company, although based in St. Louis, Missouri, sold equipment throughout the United States, at the time he registered the Fabick trademark, including in Wisconsin. (*Id.* at 103, 134.)[7]

---

[7] Indeed, as explained in the court's summary judgment decision, Jay is a member of the third generation of the Fabick Family selling heavy equipment begun by his grandfather, John Fabick, Sr., some 100 years ago.

Based on this evidence, defendant argues that the court should find "unclean hands" and deny plaintiff any equitable relief. That doctrine "closes the doors of a court of equity" unless the plaintiff has "acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Machine Co.*, 334 U.S. 806, 814-15 (1942). To invoke the doctrine, however, the court must find that plaintiff has committed "[a] willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Id.* at 815.

In its brief in opposition to plaintiff's motion for post-verdict relief, therefore, defendant argues that "[i]f Plaintiff believed in 1994—as it does today—that using the FABICK mark in connection with a Caterpillar dealership was likely to cause confusion with Plaintiff's coating business, then Jay's declaration was false." (Def.'s Opp'n (dkt. #382) 14-15.) The court agrees with the legal proposition. The problem for defendant is that it did not prove this as a factual proposition.

In other words, defendant did not establish Jay Fabick intentionally lied in signing the above-quoted declaration. Instead, it appears that his failure to disclose the John Fabick Tractor Company's use of the mark was based on a belief that the use of the Fabick mark on protective coatings and sealants would not likely be confused with the use of the Fabick mark by the John Fabick Tractor Company on heavy equipment, a belief his father, who had been a principal of that company and of a related company, Fabco, Inc., that sold and serviced new equipment in the upper Midwest, apparently shared.

Although not arising to fraud, the confusion that inevitably ensued after John Fabick Tractor Company acquired Fabco and began to use the Fabick name in Fabick, Inc.'s

territory still informs and, in the court's view, ultimately helps frame the equitable relief to which plaintiff is entitled here. As the court explained at trial, plaintiff has presented a catch-22 of sorts "by getting a mark represented to be distinct with respect to certain products and then arguing later that it's now confusing because other products are being sold that are not within that description." (Trial Tr. (dkt #370) 135.) This concern certainly impacts the court's view of the balance of the harms and the public interest factor.[8] In particular, the court is disinclined to reward, as a matter of equity, a trademark applicant who presents a narrow view of the trademark's application to specific products and services and then seeks a broad, comprehensive injunction for the use of the trademark by defendant with respect to unrelated products and services, especially where, as addressed below, the association with that larger, respected and prosperous business is likely to work to plaintiff's benefit if the risk of confusion can be adequately addressed by other means.

*Second*, the court considers the nature of the harm at issue here, as well as the relationship between that harm and the scope of the injunction sought. *See Authenticom,*

---

[8] Defendant also argues that the balance of harms weighs in its favor in light of the extensive efforts and resources defendant undertook in rebranding three years ago, and the efforts and resources it would have to expend to rebrand again if the court were to enter plaintiff's requested injunction. This argument largely relies on a declaration submitted by Thomas Sventicka, defendant's Vice President of Marketing. (Dkt. #384.) Plaintiff moved to strike this affidavit, and the portions of defendant's brief relying on the declaration, arguing that defendant should have submitted this evidence during the trial, rather than in response to plaintiff's motion for injunctive relief. (Dkt. #388.) As defendant explained in its opposition to the motion to strike, however, the court provided defendant with an opportunity to respond to the terms of plaintiff's requested injunctive relief, and Svetnicka's declaration arguably falls within the scope of that response. Regardless, defendant's argument on the balance of harms and the content of Svetnicka's declaration is not central to the court's consideration of the *eBay* factors, nor to its determination to enter an injunction requiring notices and disclaimers, rather than barring defendant from use of the Fabick name altogether. As such, plaintiff's motion to strike is denied as moot.

*Inc. v. CDK Glob., LLC*, 874 F.3d 1019, 1025 (7th Cir. 2017) (explaining that the plaintiff's theory of harm "does not stand in a vacuum; to the contrary, any injunction, and especially this one, has costs for [defendants]"). While in its brief, defendant would minimize to the point of entirely negating plaintiff's claimed harm, plaintiff failed to present evidence of *any* damage to its goodwill or reputation caused by defendant's use of the Fabick mark. As defendant details in its brief in opposition, Fabick's current business model largely entails sales to a single, out-of-state customer of its Pour-Pac product, a product that appears to have zero application to the heavy equipment industry in which defendant competes. Accordingly, plaintiff's current business model does not appear to depend on a strong association in the public's mind with the FABICK mark in Wisconsin and the UP.

Mainly, defendant's infringement simply injures plaintiff's ability to control its mark.[9] While this is a real injury, cognizable under trademark law, *see James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976), it is not the type of irreparable harm common in trademark cases in which courts have granted an injunction precluding the defendant from any use of the trademark. In particular, in its brief in support of a permanent injunction, plaintiff relies extensively on the Seventh Circuit's opinion in *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1082, 1091 (7th Cir. 1988), affirming the grant of a permanent injunction and rejecting a narrower remedy involving a disclaimer. *Id.* at 1091. In that case, however, the plaintiff presented

---

[9] Plaintiff hints at more concrete damages in the form of calls or other communications to defendant, which were not relayed to plaintiff. (Pl.'s Br. (dkt. #375) 7-8.) However, actual evidence in support of this theory was largely anecdotal and can be addressed without barring defendant's use of the name for other purposes.

evidence of damages to its goodwill, including customers and other vendors expressing concerns about the apparent affiliation between the plaintiff, an organization devoted to purebred dog shows, and the infringing defendant, who sold stuffed toy dogs. *Id.* at 1082 (noting among other pieces of evidence, plaintiff received a letter stating that "We are concerned as vendors that this [apparent selling of toy dogs] conflicts with the stated aims of your involvement as a purebred dog club").  In contrast, the overwhelming evidence is that plaintiff, which after all was an offshoot of the heavy equipment business owned by the Fabicks, albeit then operating under the Fabco brand name, benefitted and likely continues to benefit, from an association with that business.

The Lanham Act provides that the court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a); *see also* 5 *McCarthy on Trademarks & Unfair Competition* § 30:3 (5th ed. 2018) ("In trademark cases, the scope of the injunction to be entered depends upon the manner in which plaintiff is harmed, the possible means by which that harm can be avoided, the viability of the defenses raised, and the burden that would be imposed on the defendant and the potential effect upon lawful competition between the parties.").  Just such a departure from the typical remedy of an injunction barring the defendant from use of the trademark is warranted under the equities here.  In its response brief, defendant proposes instead an injunction requiring it to distribute a series of notices and disclaimers, directed at various audiences through an array of media over an extended period of time.  (Def.'s Opp'n (dkt. #382) 36-39.)  The court agrees with defendant that this remedy both addresses the nature of plaintiff's harm and accounts for plaintiff's

representations to the USPTO at the time that it applied for the Fabick marks. *See e.g.,*
*Spring Mills, Inc. v. Ultracashmere, Ltd.*, 724 F.2d 352, 355 (2d Cir. 1983) (affirming district
court's order entering limited injunction requiring a disclaimer rather than the "absolute"
injunction requested by plaintiff).

Accordingly, the court will enter an order requiring defendant to provide the
following notices and disclaimers:

- To defendant's employees on the intranet and on reference cards at each
  reception desk in the form described in defendant's brief (dkt. #382 at 36-
  37) for a period of five years from the date of this order. Specifically,
  defendant's employees are to be regularly reminded to refer questions about
  Fabick, Inc., or its products and services to Fabick, Inc., including providing
  its phone number and address, in response to internet and telephone
  inquiries.

- To defendant's customers in an insert with invoices and on all invoices in
  the form described in defendant's brief (dkt. #382 at 37) for a period of five
  years from the date of this order.

- To defendant's vendors in an insert with all purchase orders in the form
  described in defendant's brief (dkt. #382 at 38) for a period of five years
  from the date of this order.

- To the public on defendant's websites in the form described in defendant's
  brief (dkt. #382 at 38) for a period of five years from the date of this order.

- To plaintiff's customers and vendors in the form to be drafted by plaintiff
  and approved by defendant to be mailed once per year for three years. If
  there is any disagreement, the parties should provide proposed drafts to the
  court no less than thirty days before mailing.

**B. Award for costs of corrective advertising**

Plaintiff also seeks an award of $500,000 for corrective advertising as a further
equitable remedy, arguing that this amount is reasonable because it would take plaintiff a
minimum of $500,000 to start over with a new name. In response, defendant first argues

that plaintiff never sought this as a category of damages, and therefore should be barred from pursuing it at this late date. Because this is an equitable remedy, it is less clear what obligation exists under Rule 26(a)(1)(A)(iii) to provide alternative methods of calculating relief. The cases cited by defendant simply stand for the proposition that an award for corrective advertising is "like" a compensatory damages award, because it is intended to make the plaintiff whole, however, those cases do *not* hold that it *is* a compensatory damages award, for which plaintiff here would not be entitled, given the court's prior ruling. (*See* Def.'s Opp'n (dkt. #380) 43.) Given that any award for costs of corrective advertising only arises because the court has rejected plaintiff's principal request for a more sweeping injunction that would have rendered such advertising unnecessary, the court is not prepared to hold some award for these costs is barred here.

While the court rejects defendant's argument that plaintiff should be barred outright from even making such a request, however, the circumstances at issue here do not warrant that award. "'Corrective advertising' is a method of repair. Defendant diminishes the value of plaintiff's trademark, and advertising restores that mark to its original value." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992). As explained above, however, there is no evidence that plaintiff's trademark has been injured by the infringement. Just the opposite. Accordingly, at least with the corrective measures addressed by the permanent injunction, plaintiff's injury is limited to its ability to control fully its trademark. That injury -- the lack of control -- is best addressed through the disclosures and notices defendant is required to provide. Moreover, the injunctive order requires defendant to mail various disclosures and notices to plaintiff's customers and

vendors, which in essence serves the same function as a monetary award to plaintiff to cover corrective advertising.[10]   As such, the court will deny plaintiff's request for the cost of corrective advertising.

### C. Attorney's Fees

Instead of moving for attorney's fees under the Lanham Act, 15 U.S.C. § 1117(a), plaintiff seeks fees under Federal Rule of Civil Procedure 37(c)(2).  That provision states:

> (2) Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

Plaintiff contends that:  (1) defendant failed to admit that it infringed plaintiffs' trademark; and (2) none of the exceptions to Rule 37(c) apply.  Specifically, plaintiff argues that defendant did not have a "reasonable ground to believe that it might prevail" on the likelihood of confusion element or on its affirmative defenses.  This is a frivolous argument.

---

[10] The court also notes that plaintiff offers no legal or factual support for its assertion that:  (1) the corrective advertising award should cover the cost of plaintiff having to start over with a new name; and (2) the cost of starting over with a new name would be, at a minimum, $500,000.  (*See* Pl.'s Br. (dkt. #375) 19.)   Even if plaintiff were entitled to some amount of money for corrective advertising, therefore, plaintiff has failed to develop any credible argument or evidence in support of a specific, reasonable amount to accomplish that task.

In denying plaintiff's motion for summary judgment, the court already found that defendant had a reasonable basis for defending against plaintiff's claims of infringement and for pursuing its affirmative defenses, some of which could have relieved it of any liability.[11]  Were the court to adopt plaintiff's approach, that any time a party ultimately prevails at trial it somehow renders the opposing party's defense unreasonable, attorney's fees would *always* be shifted in contravention of the "American Rule," which precludes the award of "fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001). Regardless, as defendant points out in its opposition, plaintiff's request for an admission to an ultimate issue in this case was objectionable under Rule 36(a) and, therefore, not subject to a fee award under Rule 37(c)(2)(A).  (*See* Def.'s Opp'n (dkt. #380) 47.)

### D. Costs

Finally, plaintiff seeks an award of costs pursuant to 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 54(d)(1), submitting a list of itemized costs and supporting documentation and seeking reimbursement of $24,397.97.  (Pl.'s Br. (dkt. #375) 29-30; Exs. D, E (dkt. ##378-4, 378-5).)  In response, defendant contends that such an award is premature given that judgement has to be entered.  While correct with respect to an award of costs under Rule 54(d)(1), the Lanham Act contemplates an award of costs as part of

---

[11] Had plaintiff moved for attorney's fees pursuant to 15 U.S.C. § 1117(a), the court would also have rejected an award for much the same reason, finding that this case was not "exceptional" because defendant had a reasonable defense to plaintiff's infringement claims.  *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 956, 963-64 (7th Cir. 2010) (defining exceptional case for purposes of awarding attorney's fees under the Lanham Act).

the judgment. While defendant has indicated that it does object to certain categories of costs, it did not detail those objections. (Def.'s Opp'n (dkt. #382) 57 n.32.) Moreover, the categories of costs and the amount of reimbursement sought for those categories appear reasonable and are well documented. (*See* Dettman Decl., Exs. D, E (dkt. ##378-4, 378-5).) Accordingly, the court will grant plaintiff an award of costs in the amount of $24,397.97.

ORDER

IT IS ORDERED that:

1) Defendant JFTCO's post-trial request for judgment against plaintiff's trademark infringement claims is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is GRANTED as to plaintiff's common law trademark infringement claim, for which the jury found in defendant's favor, and DENIED in all other respects.

2) Plaintiff's motion for permanent injunction (dkt. #376) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to ordering defendant to provide notices and disclosures as described above in the opinion and as to an award of costs in the amount of $24,397.97. In all other respects, the motion is DENIED.

3) Plaintiff's motion for attorney fees (dkt. #377) is DENIED.

4) Plaintiff's motion to strike (dkt. #388) is DENIED as moot.

5) The clerk of court is directed to enter judgment consistent with this opinion and order and close this case.

Entered this 22nd day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge